IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ADAM HILL                                                              PLAINTIFF

v.                                    Civil No. 6:21-CV-06029

DEXTER PAYNE, *et. al.*                                                DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court are Plaintiff's Motion for Preliminary Injunction and Case Update,. (ECF No. 29), and Plaintiff's two additional Motions for Preliminary Injunction (38, 61).

## I.  BACKGROUND

Plaintiff filed his Complaint in the Eastern District of Arkansas on February 2, 2021. (ECF No. 2). It was transferred to this District on March 17, 2021. (ECF No. 12). Plaintiff filed his Third Amended Complaint ("Complaint") on May 14, 2021. (ECF No. 31). Plaintiff's Complaint centers on his incarceration in the Arkansas Division of Correction Ouachita River Correctional Unit. For his first claim, Plaintiff alleges that on "different dates" Defendants did not follow the Center for Disease Control and Prevention ("CDC") guidance and precautions for COVID-19. (*Id*. at 4). This led to Plaintiff contracting COVID-19 on July 10, 2020. (*Id*.). He further alleges that "he faced severe retaliation for exercising [his] First Amendment rights." (*Id*.). Plaintiff names Defendants Payne, Straughn, Griffin, Earl, Ball, Hosman, Culclager, Kinnu, Settles Scott, WellPath Medical Corporation, Reed, Graves, Warner, Seeley, Gillette, Collins, Agular, Pitts, Voss, Hosman, and Coleman for this claim. (*Id*. at 4). He identifies these Defendants as being

1

ADC Ouachita River Unit staff,  ADC upper-level administration staff, medical staff at the Ouachita River Unit, or WellPath (the medical corporation which provides medical services to the ADC).  (*Id*. at 2-3, 7-11).

For his second claim, Plaintiff alleges that on November 9, 2020, he was taken out of his Christian "Pals" Program and transferred to another ADC unit.  Plaintiff alleges that this was done in retaliation for his filing grievances about the failure to follow CDC guidance and precautions at ORCU.  (*Id*. at 5).  Plaintiff names Defendant Ball, Earl, Culclager, Hosman, Payne, and Griffin for this claim.  (*Id*. at 5).  He identifies these Defendants as ADC ORCU staff or ADC upper-level administration staff.  (*Id*. at 2-3, 7-11).

For his third claim, Plaintiff alleges he was denied mental health care and mental health medication in retaliation for his filing of grievances.[1]  (*Id*. at 12).  Plaintiff names the WellPath Medical Corporation, Doe Health Services Administrator and Director of Nursing, Monroe, Collins, Kinnu, McDonald, Anderson, Taliaferro, Griffin, Payne and Earl.  (*Id*. ).  Plaintiff identifies these Defendants as WellPath, medical staff at ORCU, or ADC upper-level administration staff.  (*Id*. at 2-3, 7-11).  Plaintiff does not identify specifically which medical conditions he was denied treatment for, other than the reference to mental health.  (*Id*. at 12).

### A.  First Motion for Preliminary Injunction

Plaintiff filed his first motion, entitled "Motion for Update on Case and for TRO/Preliminary Injunction," on April 28, 2021.  (ECF No. 29).  He indicates he is now incarcerated in the ADC Tucker Unit, and requests that the Court order Defendants "Payne, Straughn, Reed, Griffin, the Health Services Administrator of Nursing, and WellPath Medical

---

[1] Plaintiff's exact allegation was "Defendants denied me medical treatment, delayed me medical treatment, denied me mental health medical and medication out of retaliation over me filing grievances." (ECF No. 31 at 12.) As Plaintiff identifies no medical condition other than the category of mental health, the Court will interpret this claim to be a denial of mental health care for an unidentified mental health condition.

Corporation" to immediately take him for outside medical care to get a correct diagnosis. Plaintiff requests a diagnosis for the symptoms of "blowing blood and chunks of cartlidge [sic] out of my nose," and gums which are "bleeding, peeling, blistering up." (*Id*.). Plaintiff alleges both conditions are very painful. (*Id*.). Plaintiff alleges that Defendant have been "guessing with my diagnosis" for a year. (*Id*. at 2). Plaintiff asks the Court to order "Parsins and Seamster" to continue outside medical care. (*Id*.). These individuals are not named as Defendants in this case and do not appear to be state actors as required for a § 1983 claim. Plaintiff does not claim the lack of correct diagnosis was a form of retaliation.[2]

### B. Second Motion for Preliminary Injunction

Plaintiff filed his Second Preliminary Injunction on August 4, 2021. (ECF No. 38). Plaintiff asks the Court to "stop the retaliation" he is receiving from the ADC. He alleges he is being retaliated against for filing inmate grievances and "other lawsuits." (*Id*. at 1). Plaintiff alleges he was discharged from his Christian "Pals" program at the Ouachita River Unit and transferred to the ADC Grimes Unit on November 9, 2020. He alleges he was placed in with inmates of other ADC Class status, and he contracted COVID-19 for the second time. (*Id*. at 2).

He alleges that in March 2021, he was transferred to the Tucker Unit to take the TC program for his alcoholism. (*Id*. at 2). When he filed grievances about not being able to social distance in the TC barracks, he was harassed by guards. (*Id*. at 3). Plaintiff alleges his grievances had merit, which led Defendant Straughn to move the TC program to a different barracks. (*Id*.). Security staff then started telling other inmates that Plaintiff was a snitch. When he reported this to Security, "a couple weeks later" he was locked up for 8 days, unlawfully removed from the TC

---

[2] Plaintiff filed a document entitled "Motion for Assistance and Update" on September 23, 2021. (ECF No. 58). It was docketed as a supplement to his First Motion. In it, Plaintiff asks for an update to the case and ask that he be allowed to attend the injunction hearing in person. He also appears to list an example of a transfer that he believes is retaliatory. As Plaintiff has already received a case update, no hearing is necessary for the injunction motions, and his example is not related to the allegations in his First Motion, this document will not be considered further.

program, and transferred back to the Grimes Unit. (*Id*.). Plaintiff alleges he should have been transferred to the Wrightsville Unit so he could finish the TC program for his alcoholism. (*Id*.). Plaintiff alleges that when his mother called Defendant Straughn about the harassment and retaliation, Straugh told her that Plaintiff was the reason the program needed to be moved. (*Id*.).

On June 22, 2021, while in the ADC Grimes Unit, he was forced to mow grass, which was a "downgraded job" from the job he had at the Tucker Unit. (*Id*. at 4). Plaintiff alleges that Defendant Straughn – the Deputy Director of the ADC is "over" the Grimes Unit. (*Id*.).

On July 14, 2021, he was transferred to the ADC Randall L. Williams Unit, which he alleges had worse living conditions, and where he was placed in a barracks with violent offenders. Plaintiff alleges he is a non-violent Class 1 inmate – "the best class to have." (*Id*.). In this barracks he was exposed to second-hand drug smoke and witnessed three gang beatings. (*Id*.). He had his mother call Dexter Payne, William Staughn, and Rory Griffin, and they refused to believe her and refused to investigate the gang beatings. Plaintiff remained in the barracks. (*Id*.). His mother also called the warden on the Randall Unit, Joe Page, III. Plaintiff alleges the warden refused to do anything because Plaintiff had named him as a Defendant in *Hall v. Page*, Case No. 21-cv-00046-BRW-JJV. (*Id*. at 5). Plaintiff further alleges that he went to a classification hearing on July 28, 2021, and an unidentified deputy warden told the classification committee that he was a "manipulator and had to be watched." (*Id*.). As a result, the Committee made him a Barracks Porter in order to keep him in that dangerous environment, with "the intent to get me hurt or killed." (*Id*.). Plaintiff does not allege that he was injured in any way, or that any inmate threatened him with injury.

Plaintiff sums up his second motion as follows:

> ADC Defendants and other ADC staff has evil intent to do me harm. Taking my programs from me for exercising my constitutional rights was done to keep me in prison. Defendants are guilty of failure to act because they know I am being treated

4

unconstitutional but they choose to do anything about it other then participate in violating my rights.

(*Id*. at 6).

## C.  Third Motion for Preliminary Injunction

Plaintiff filed his third Motion for Preliminary Injunction on October 7, 2021.  (ECF No. 61).  Plaintiff does not indicate where he is currently incarcerated in the Motion.  The return address on the envelope for this Motion, Plaintiff's current mailing address with the Court, and his ADC records all indicate he is currently incarcerated in the ADC Tucker Maximum Security Unit. (ECF No. 61 at 5).  He asks the Court to order ADC Medical Director Rory Griffin to get him to outside medical treatment for a proper diagnosis and treatment.  (*Id*. at 1).  Plaintiff alleges his gums are peeling, "blister up," bleed and are very painful.  (*Id*.).  He further alleges that he has nasal blockage and bleeding, with large sores and nose bleeds.  (*Id*.).  He alleges this condition has now attacked his eyes, causing blurred vision and constant watering in his eyes.  (*Id*. at 1-2.) Plaintiff alleges that WellPath medical staff have given him different diagnoses.  (*Id*. at 2). Plaintiff alleges he was taken to several outside providers, including the University of Arkansas for Medical Sciences, but then Defendant Griffin "has just gave up on getting me the proper outside medical."  (*Id*. at 3).  He alleges he first noticed the problems on May 1, 2020, the day he came to the ADC, and it has progressed during his time in the ADC.  (*Id*. at 2).  Plaintiff does not allege that the difficulty in diagnosing his medical conditions has been done in retaliation for the exercise of any constitutional right.  Instead, he alleges his medical care amounts to deliberate indifference. (*Id*. at 4).

## D.  Motion Responses

The ADC Defendants (Ball, Coleman, Culclager, Earl, Graves, Griffin, Hosman, Payne, Reed, Settles, Voss, and Warner) filed an Answer and a Motion for Extension of time on August 27, 2021.  (ECF Nos. 45, 46).  This was granted, and they filed a Response to Plaintiff's Second

Motion on September 3, 2021.  (ECF No. 54).  Defendant Griffin filed a Response to Plaintiff's Third Motion on October 13, 2021.  (ECF No. 64).[3]

## II.  LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of temporary restraining orders and preliminary injunctions.  In deciding a motion for a temporary restraining order or a preliminary injunction, the courts are instructed to consider the following factors:  (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury granting the injunction will inflict on other interested parties; and (4) whether the issuance of an injunction is in the public interest.  *Dataphase Systems, Inc. v. C. L. Systems, Inc*., 640 F.2d 109, 114 (8th Cir. 1981) (en banc); s*ee also Minnesota Mining and Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1307 (8th Cir. 1997);  *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 485-86 (8th Cir. 1993).

While no single factor in itself is dispositive, the Eighth Circuit Court of Appeals has held "the two most critical factors for a district court to consider in determining whether to grant a preliminary injunction are (1) the probability that plaintiff will succeed on the merits, and (2) whether the plaintiff will suffer irreparable harm if an injunction is not granted." *Chicago Stadium Corp. v. Scallen,* 530 F.2d 204, 206 (8th Cir. 1976).  The burden of proving a preliminary injunction is warranted rests on the movant.  *Goff v. Harper,* 60 F.3d 518, 520 (8th Cir. 1995).  In addition, the Eighth Circuit has instructed that "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration."  *Id.* (internal quotations omitted).

---

[3] The Medical Defendants have not filed an Answer.

### III.  ANALYSIS

### A.  Plaintiff's First and Third Motions for Injunctive Relief are Unrelated to his § 1983 Complaint

Preliminary relief is granted "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).  Therefore, the party requesting preliminary relief must "establish a relationship between the injury claimed in the party's motions and the conduct asserted in the complaint." *Id.*

Here, Plaintiff failed to establish any relationship between the allegations in his Complaint and the relief requested in his First and Third Motions for injunctive relief.  (ECF Nos. 29, 61). His Complaint alleges three claims centered on the time he was housed in the Ouachita River Unit. First, various staff assigned to that Unit, as well as ADC upper-level administrative staff, failed to follow CDC guidance to prevent the spread of COVID-19, and Plaintiff contracted that disease. Second, various staff assigned to that Unit, as well as upper-level ADC administrative staff, retaliated against him for filing grievances and lawsuits by transferring him out of the Ouachita River Unit, which resulted in him being removed from his "Pals" program.  Third, various staff assigned to that Unit, as well as upper-level ADC administrative staff, denied him medical care for conditions identified only as a mental health concerns in retaliation for filing grievances.

In contrast, Plaintiff's First Motion, (ECF No. 29), indicates he was, at the time of filing the motion, housed at the ADC Tucker Unit.  He asks that Defendants "Payne, Straughn, Reed, Griffin, the Health Services Administrator of Nursing, and WellPath Medical Corporation" be ordered to take him to an outside medical provider so that he can receive a correct diagnosis for persistent issues with his nasal passages and gums.  (ECF No. 29).  He also asks that "Parsins and Seamster" be ordered to continue outside care.  Parsins and Seamster are not named in this lawsuit

7

and do not appear to be state actors.  Plaintiff does not allege that the difficulty in diagnosing his gum and nasal conditions was a form of retaliation for filing grievances or lawsuits.

In his Third Motion (ECF No. 61), Plaintiff was housed in the ADC Tucker Maximum Security Unit.  Plaintiff asks the Court to order Defendant Rory Griffin to get him outside medical care so that he can get a correct diagnosis and treatment for the same issues he complains of in the first motion concerning his gums and nasal passages.  He also alleges he is now having issues with his eyes. Plaintiff does not allege that the difficulty in diagnosing his conditions was a form of retaliation for filing grievances or lawsuits.  Instead, he alleges that his medical care amounts to deliberate indifference.

Thus, these two motions for preliminary injunction center on Plaintiff's disagreement with medical care while at a Unit different than the one in his Complaint, and at a Unit that is, moreover, outside the jurisdiction of the Western District of Arkansas.[4]  Because his injunctive motion allegations center on the Tucker Unit, his injunction allegations are moot as to the majority of the named Defendants for this case, who, with the exception of the upper-level ADC staff,[5] all work at the Ouachita River Unit.  *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (release from the institution in which the injunctive relief is sought against moots the request for injunctive relief).  *See also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (holding an inmate's

---

[4] Plaintiff has indicated that he also has lawsuits proceeding in the Eastern District of Arkansas.  It is possible that these motions would be more correctly filed with cases he has there, assuming the topic of those cases is related.

[5] Regarding the upper-level ADC staff – Director Payne, Deputy Director Griffin, Secretary Graves, and Chief Deputy Dale Reed - Plaintiff does not allege how these individuals were personally involved in the diagnostic difficulties for his gums, nasal passages, and eyes.  Additionally, in Response to Plaintiff's Third Motion, Defendant Griffin argues that his role as Deputy Director for Health and Correctional Services involves the review of medical grievances. Defendant Griffin is not a physician, does not provide medical care and does not second-guess medical decisions made by medical personnel employed by the separate medical Defendants.  (ECF No. 64 at 2).  As Defendant Griffin is not a medical care provider, he argues he is entitled to rely on the decisions of medical staff and cannot be liable for any treatment decisions.  Thus, Plaintiff cannot show a threat of irreparable harm and does not have a likelihood of success relative to any action or inaction by Defendant Griffin concerning medical care for his gums, nasals passages or eyes. (Id. at 5).  See Camberos v. Branstad, 73 F.3d 174 (8th Cir 1995); ECF No. 64-1.  The Court agrees.

claims regarding prison conditions moot once the inmate was transferred and no longer subject to those conditions).

Nor are the claims of his Complaint and these motions for injunction in any way related. In his Complaint Plaintiff's alleges he was denied medical care and treatment for mental health issues while at the Ouachita River Unit, and this denial was done in retaliation for his filing of grievances and lawsuits. In these two motions for injunction, Plaintiff asks for outside medical care for medical conditions completely unrelated to those in his Complaint, and makes no allegation that the difficulty of getting a correct diagnosis was in any way a form of retaliation for exercising his First Amendment rights. His requests for injunctive relief, therefore, should be denied. *See, e.g.*, *Devose*, 42 F.3d at 471 (denying a preliminary injunction where a prisoner's retaliation allegation was "entirely different from" the inadequate medical care claims and relief requested in his § 1983 complaint); *Owens v. Severin*, Case No. 08-1418, 2008 WL 4240153 (8th Cir. Sept. 18, 2008) (unpublished opinion) (denying a prisoner's request for a preliminary injunction because the "the relief sought was unrelated to the allegations in his [§ 1983] complaint".)

In his First Motion, Plaintiff also asks for a case update. As the Court has already ordered a copy of the docket sheet to be sent to Plaintiff, this portion of the First Motion should be denied as moot.

### B. Plaintiff Has Not Met His *Dataphase* Burden for his Second Motion for Injunctive Relief

Plaintiff's Second motion (ECF No. 38) alleges he has been transferred to different ADC units, removed from two inmate programs, and has suffered inmate classification changes in retaliation for his filing of grievances and lawsuits. Plaintiff asks the Court to order the ADC to "stop the retaliation." Plaintiff is effectively asking the Court to permit him to choose where he will be housed in the ADC, what inmate classification he should receive, and what programs he

will participate in while this case is pending. Thus, this request does not seek to preserve the *status quo*. Instead, it seeks rights and privileges to which Plaintiff is not entitled. First, Federal courts, including the Supreme Court, have consistently held that inmates are not entitled to due process protections in relation to discretionary transfers between prison facilities. See *Montayne v. Haymes,* 427 U.S. 236, 242–43, 96 S.Ct. 2543 (1978) (finding no constitutional right to be housed in a particular state prison); *Meachum v. Fano,* 427 U.S. 215, 224 (1976) (holding that no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a "grievous loss" upon the inmate). This means that prisoners have no inherent constitutional right to placement in any particular prison; to transfer to a particular prison; to a particular security classification; or to a specific housing assignment. *See Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."). In addition, prisoners generally have no constitutionally protected liberty interest in their placement and classification while incarcerated. *See Moody v. Daggett,* 429 U.S. 78, 88 n. 9 (1976). Thus, Plaintiff has not met his burden of showing a likelihood of success on the merits based merely upon his transfers to different units, removals from inmate programs, or inmate classification changes.

Further, as the ADC Defendants correctly argue, Plaintiff's request to "stop the retaliation" asks the Court to grant the ultimate relief sought in the second claim of his Complaint, without the inconvenience of having to first prove that any retaliation occurred. This is not an appropriate use for an injunction. *See WarnerVision Ent. Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996) ("The purpose of a preliminary injunction is not to give the plaintiff the ultimate relief it seeks."); *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.,* 997 F.2d 484, 490 (8th

Cir.1993) (affirming the denial of a request for preliminary injunction as seeking improper injunctive relief, because the motion asked for an affirmative action to correct an alleged issue before that issue had been decided on the merits).

Second, Plaintiff has not demonstrated he will suffer any irreparable harm if injunctive relief is denied. Plaintiff alleges only that they are transferring him, removing him from programs, and changing his classification "to keep me in prison."[6] Combining this statement with his reference to a hearing with the classification committee, Plaintiff appears to be alleging that he is being harmed because these actions are negatively affecting his eligibility for parole. As Plaintiff has no constitutional right to parole, [7] being kept in prison pursuant to his criminal sentence does not allege an irreparable injury. Plaintiff does not allege he is being kept in prison beyond the expiration of his sentence. He suffers no cognizable injury as a result. Without a finding of irreparable injury, a preliminary injunction should not be issued. *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir. 1989) (en banc).

While not necessary to the conclusion here, the Court will also consider the harm and injury to Defendants if an injunction is granted and assess whether the issuance of an injunction would be in the public interest. In assessing the public interest, it must be remembered that "federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States." *Meachum v. Fano*, 427 U.S. 215, 229 (1976). Granting injunctive relief at this point based on Plaintiff's unsubstantiated allegations would amount to direct interference by the Court with the operation and administration of the ADC, which is harmful to Defendants and does not

---

[6] Plaintiff also alleges that one of the barracks he was placed in was more dangerous than a previous barracks, but he does not allege that he was harmed, or even threatened with harm. This is insufficient to meet his *Dataphase* burden for this factor. *See Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir.1996). (In order to demonstrate irreparable harm, the movant must demonstrate that "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.").

[7] "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979).

serve any public interest. Defendants correctly argue that "to grant the motion would impair ADC's ability to achieve its mission to most effectively house criminal offenders convicted of crimes in the State." (ECF No. 54 at 4). As noted above, the Court should grant injunctive relief only "with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff*, 60 F.3d at 520.

## IV.  CONCLUSION

Accordingly, I recommend that Plaintiff's Motion for Preliminary Injunction and Case Update (ECF No. 29) be **DENIED.** I further recommend that Plaintiff's two additional Motions for Preliminary Injunction (ECF Nos. 38, 61) should be **DENIED**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **27th day of October 2021**.

/s/ *Barry A. Bryant*

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE